The Honorable Paul Bookout State Senator 1900 West Washington Jonesboro, Arkansas 72401-2577
Dear Senator Bookout:
You have asked for my opinion on a number of questions related to the fees charged to cities, pursuant to A.C.A. § 12-41-506, for municipal prisoners housed in county jails. Your questions are restated as follows:
 1) How long must a person arrested by a municipal police officer for a city ordinance violation or a state misdemeanor and taken to the county jail remain incarcerated before the city becomes liable for paying the county the daily fee for keeping prisoners under A.C.A. § 12-41-506? For example, if such an arrestee is taken to the county jail where he or she is booked and then released on bond, does the daily fee attach?
 2) How is it determined whether the expenses on which a county's daily fee for keeping prisoners is based are "reasonable" for purposes of A.C.A. § 12-41-506(a)(2)?
 3) If "reasonable expenses" are based on operating expenses, what recourse does a municipality have if it believes that the county jail housing municipal prisoners is being operated inefficiently thus raising the county's daily fee for keeping prisoners arbitrarily?
 4) At what point does a city housing prisoners in the county jail become liable to the county for the daily fee for a particular prisoner: *Page 2 
when the prisoner is first incarcerated, when the prisoner is charged, or when the prisoner is convicted and sentenced?
 5) If a person is arrested and delivered to the county jail by a municipal police officer for an offense that constitutes a felony under Arkansas law, does the city have any liability to the county for that prisoner?
 6) It is clear that a city keeping prisoners in the county jail is liable to the county for the daily fee for prisoners convicted and sentenced for city ordinance violations; however, my question is whether the city is liable for any additional time served by such prisoners due to related charges not brought by the city (e.g. contempt of court, violation of probation, non-payment of fines, failure to perform court-order community service, etc.)?
 7) If a person is arrested by a municipal police officer for a city ordinance violation or misdemeanor and taken to the county jail where it is discovered that there is an outstanding warrant for that person's arrest, either from that county, another county or another city, which entity is responsible for paying the daily fee for that prisoner? Are the expenses shared?
 8) Can the sheriff or his representative refuse to accept custody of a person lawfully arrested by a municipal police officer from a city within the sheriff's county?
 9) In light of A.C.A. § 12-41-506(d), can the sheriff refuse to accept custody of a municipal prisoner from a city within his county if he is housing inmates from other counties at the time?
 10) Once the county accepts custody of a municipal prisoner such that the city will be charged the county's daily fee for said prisoner, who is responsible for transporting that prisoner to court appearances? Who is responsible for providing security if such prisoner requires an extended hospitalization? *Page 3 
 11) What information should appear on the monthly bill sent by the sheriff, pursuant to A.C.A. § 12-41-506(c)(1), to cities housing prisoners in the county jail?
 12) May a city and a county enter into an agreement where the county houses the city's prisoners for a flat monthly rate? May the county charge other cities a different rate, either daily or monthly?
 13) May the county charge one city within the county for daily inmate fees while waiving such fees for another municipality within the same county?
RESPONSE
As an initial matter, I note that your opinion request does not provide any specific background information nor does it identify any particular county or city. I must, therefore, assume that your questions are posed generally and without reference to any particular set of circumstances.
Moreover, with the exception of restated question twelve (12), your request does not appear to contemplate the existence of any city/county agreement, pursuant to A.C.A. § 12-41-503(d), for the housing of prisoners. In fact, most of your questions directly or indirectly reference A.C.A. § 12-41-506, which is a "default" provision permitting the county quorum court to set a daily fee for housing prisoners in the absence of such an agreement. Accordingly, I assume that all of your questions (except restated question twelve (12)) are intended to inquire as to the law where the county quorum court has passed an ordinance setting a daily fee in the absence of an agreement. Because the responses to your questions refer to this "default" provision, you should be aware that a city/county agreement for housing prisoners could vary the outcome significantly.
With those caveats:
In response to restated question 1, it is my opinion that a city becomes liable to the county for the daily fee for a municipal prisoner as soon as the city's police officer delivers that prisoner to the county jail and into the sheriff's custody. It is my further opinion that the only fee that may be imposed is the full daily fee set by the county quorum court to be imposed once in each 24-hour period. In response to *Page 4 
restated question 2, it is my opinion that whether the expenses used by the county in calculating the daily fee charged to cities for housing municipal prisoners are reasonable for purposes of A.C.A. § 12-41-506(a)(2) is ultimately a question of fact to be determined by a court of law. In response to restated question 3, it is my opinion that the recourse available to a city that does not wish to house its prisoners in a city jail but disagrees with the amount that it is being charged for keeping said prisoners in the county jail is twofold: first, the city could enter into an agreement with the county for a different amount pursuant to A.C.A. § 12-41-503(d); second, the city could attempt to have a court review the reasonableness of the daily fee. In response to restated question 4, it is my opinion that a city's liability to the county for the daily fee for a municipal prisoner begins when the prisoner is first incarcerated in the county jail, i.e., when they are delivered to the jail and the sheriff or his/her representative accepts custody. In response to restated question 5, it is my opinion that this office must return to its traditional definition of a municipal prisoner with respect to felony offenders in order to avoid troubling inconsistencies in logic that occur under some recent opinions on the topic. I therefore conclude that a city is liable to the county for a prisoner arrested by a city officer on felony charges until such time as the prisoner is formally charged. In response to restated question 6, it is my opinion that the most sensible approach is as follows: if the city is liable for the prisoner both pre-and post-sentencing because he or she has violated a municipal ordinance, then the city is also liable for any additional time served on charges stemming directly from the original charge. In response to restated question 7, it is my opinion that, in these situations, the entities must share the costs of incarceration. In response to restated question 8, it is my opinion that neither the sheriff nor his representative is permitted to refuse to accept such a prisoner unless that action is necessary to limit prisoner population in compliance with the law and constitution of this state and the United States Constitution. In response to restated question 9, it is my opinion that a sheriff may not refuse in-county municipal prisoners in order to house out of county inmates. In response to restated question 10, it is my opinion that once the sheriff or his representative accepts custody of a prisoner, the county is responsible for transporting that prisoner to court appearances and providing security if that prisoner requires hospitalization. In response to restated question 11, it is my opinion that the statute contemplates a monthly bill containing enough information so that a reasonable person of approximately average intelligence can understand both the amount of the charges and the reason for the charges. Whether any particular bill or billing format is sufficient in this regard is ultimately a question of fact. This office cannot serve as a finder of fact. In *Page 5 
response to restated question 12, it is my opinion that a city and a county have the freedom to enter into an agreement where the county houses the city's prisoners for a flat monthly rate. Furthermore, it is my opinion that a county operating a jail may permissibly enter into a separate and distinct agreement for housing prisoners with each city that wishes to share its jail. However, to the extent your question asks whether the county quorum court may pass multiple daily fee ordinances in order to charge different daily fees to different cities, it is my opinion that the answer is "no." In response to restated question 13, it is my opinion that the answer to this question is "no."
Question 1: How long must a person arrested by a municipal policeofficer for a city ordinance violation or a state misdemeanor and takento the county jail remain incarcerated before the city becomes liablefor paying the county the daily fee for keeping prisoners under A.C.A.§ 12-41-506? For example, if such an arrestee is taken to the countyjail where he or she is booked and then released on bond, does the dailyfee attach? How is a "day" defined for purposes of calculating the dailyfee: is it based on every 24 hours, 12 hours, 8 hours or can it be apro-rated amount?
In my opinion, a city becomes liable to the county for the daily fee for a municipal prisoner as soon as the city's police officer delivers that prisoner to the county jail and into the sheriff's custody. It is my further opinion that the only fee that may be imposed is the full daily fee set by the county quorum court to be imposed once in each 24 hour period.
Arkansas Code Annotated § 12-41-506(a)(1) provides that, where a county and the cities within that county have not reached an agreement on sharing jail costs, the county quorum court may establish a "daily fee" to be charged to the cities for "keeping prisoners" in the county jail. Section 12-41-506 does not expressly identify the point at which a city initially becomes liable for the daily fee for a particular prisoner, but the plain language of that section seems to suggest that the city becomes liable for the "daily fee" for a municipal prisoner when the county jail begins "keeping" said prisoner.
The term "keeping" is not defined within the relevant chapter of the Arkansas Code. However, in the context of law enforcement activities, to "keep" typically means "to hold in custody or under guard, as a prisoner." RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY 1048 (2nd ed. 1999). When a prisoner is *Page 6 
delivered to the county jail and the sheriff or the sheriff's representative accepts the prisoner, that prisoner is in the sheriff's custody and the sheriff is fully responsible for said prisoner. A.C.A. § 12-41-502; Op. Att'y Gen. 97-006. At that point, it is my opinion that the county jail commences "keeping" the prisoner and the city becomes liable to the county, regardless of how soon after booking the prisoner is released.
The next issue that your request appears to raise involves the amount of the city's liability, i.e., how the daily fee should be calculated. Should the daily fee be charged in its entirety once per 24-hour calendar day, regardless of how much of that period the prisoner spent in county custody, or should some smaller portion of the fee be charged if the prisoner was in custody for only a part of the 24-hour period?
On the subject of fees, the Arkansas Supreme Court has consistently maintained that public officials may only charge fees which are authorized by statute. Aiken v. State, 368 Ark. 641, 645, 249 S.W.3d 788
(2007); Op. Att'y Gen. 2008-088. The plain language of section 12-41-506
provides only for a "daily fee." The use of the term "daily" to describe the fee appears to indicate that the fee should be charged once per calendar day, i.e., every 24 hours. See BLACK'S LAW DICTIONARY 402 (7th ed. 1999). Section 12-41-506 does not mention the availability of any pro-rated or partial fee. Accordingly, under decisions such asAiken, it seems that the entire "daily fee" established by the county quorum court is the only fee that may be charged.
In sum, it is my opinion that a city becomes liable to the county for the daily fee for a municipal prisoner as soon as the city's police officer delivers the prisoner to the county jail and into the sheriff's custody. Furthermore, it is my opinion that, under the plain language of A.C.A. § 12-41-506, once a daily fee for keeping a city's prisoner is set by the county quorum court, that entire fee should be charged once every 24-hour calendar day regardless of what portion of that 24-hour period the prisoner in question spent in county custody.
Question 2: How is it determined whether the expenses on which acounty's daily fee for keeping prisoners is based are "reasonable" forpurposes of A.C.A. § 12-41-506(a)(2)? *Page 7 
As previously stated, A.C.A. § 12-41-506(a) gives a county quorum court the ability to set a daily fee to be charged to municipalities for housing their prisoners in the county jail. A.C.A. § 12-41-506(a)(2) addresses the amount of that fee and states, in relevant part:
 The fee shall be based upon the reasonable expenses which the county incurs in keeping such prisoner in the county jail.
"Reasonableness" is generally a question of fact. This office does not decide factual issues or construe local ordinances, including county ordinances enacted by quorum courts. Op. Att'y Gen. 2005-278. It is, therefore, my opinion that whether the expenses used by the county in calculating the daily fee charged to cities for housing municipal prisoners are reasonable for purposes of A.C.A. § 12-41-506(a)(2) is ultimately a question of fact to be determined by a court of law.
It is important to recognize that A.C.A. § 12-41-506 gives the quorum court of each county the power to "prescribe the method and procedure for feeding and keeping prisoners confined in the county jail." This statute gives the quorum court a great deal of discretion to determine which expenses to incur in keeping prisoners in the county jail. Because the legislature has given the county quorum court such discretion, it appears likely that a court reviewing whether the expenses in question are reasonable will give the quorum court's judgment in this regard some deference.
Moreover, a related provision, A.C.A. § 12-41-503, may shed some light on what A.C.A. § 12-41-506 means by "reasonable expenses." Again, A.C.A. § 12-41-506 gives the quorum court the authority to pass an ordinance setting fees for municipalities sharing its jail based on reasonable expenses if there is no fee agreement between the county and the municipalities. The related provision, A.C.A. § 12-41-503(e), states that a jurisdiction which is eligible to, but does not, enter into an agreement to share a jail "may be required to pay fixed per diem charges not to exceed actual costs, including capital costs, for each prisoner committed or housed in the jail." Statutes related to the same subject matter should be construed in harmony whenever possible. For this reason, I believe that A.C.A. § 12-41-503 indicates that "reasonable expenses" under A.C.A. § 12-41-506 should not "exceed actual costs, including capital costs." *Page 8 
Finally, A.C.A. § 12-41-503(a) provides that sheriffs and others in charge of local jails within our state must "manage . . . the populations and operations of their respective facilities in compliance with the law and constitution of this state and within the requirements of the United States Constitution." Therefore, any expense undertaken in order to meet this requirement would likely be deemed a "reasonable expense" under A.C.A. § 12-41-506(a)(2).
Question 3: If "reasonable expenses" are based on operating expenses,what recourse does a municipality have if it believes that the countyjail housing municipal prisoners is being operated inefficiently thusraising the county's daily fee for keeping prisoners arbitrarily?
As stated in response to Question 2, it is my opinion that reasonable expenses under A.C.A. § 12-41-506(a)(2) are based on "actual costs including capital costs." A.C.A. § 12-41-503(a). Beyond that, whether the expenses incurred are, in fact, "reasonable" appears to be a question of fact. For this reason, it is my opinion that the recourse available to a city that does not wish to house its prisoners in a city jail but disagrees with the amount that it is being charged for keeping said prisoners in the county jail is twofold.
First, the city could enter into an agreement with the county for a different amount pursuant to A.C.A. § 12-41-503(d). This section appears to give a city and the county a good deal of latitude in fashioning an agreement for housing prisoners that suits both parties.
Second, the city could attempt to have a court review the reasonableness of the daily fee. For example, the city might trigger judicial review of the relevant county ordinance by filing a writ of mandamus on the county quorum court requesting that the quorum court be required to perform its duty under A.C.A. § 12-41-506(a)(2) and set the county's daily fee for housing city prisoners based on "reasonable expenses."[1] In order to determine whether mandamus would lie, the *Page 9 
court would likely have to determine whether the current fee charged by the county is based on reasonable expenses.
Question 4: At what point does a city housing prisoners in the countyjail become liable to the county for the daily fee for a particularmunicipal prisoner: when the prisoner is first incarcerated, when theprisoner is charged, or when the prisoner is convicted andsentenced?
As stated in response to Question 1, it is my opinion that a city's liability to the county for the daily fee for a municipal prisonerbegins when the prisoner is first incarcerated in the county jail, i.e., when they are delivered to the jail and the sheriff or his/her representative accepts custody. Generally, a prisoner delivered to the county jail is initially considered a municipal prisoner if he or she was arrested by a city officer for a violation of state or municipal law occurring within the city. Op. Atty. Gen. 2004-303.[2]
If the municipal prisoner in question is charged with a city ordinance violation, the city remains liable to the county for that individual until his or her release.[3] However, liability for a municipal prisoner charged with an Arkansas statutory misdemeanor ends once that prisoner is convicted and sentenced to the county jail. In Op. Att'y General 2004-303, my immediate predecessor in office opined that a municipal prisoner charged with an Arkansas statutory misdemeanor offense becomes a prisoner of the county upon being sentenced to the county jail, thereby relieving the city of any further liability under A.C.A. § 12-41-506. This opinion noted the historical distinction between cities' financial responsibility for prisoners held on Arkansas misdemeanor charges pre-and post-sentencing and found that this distinction was further bolstered by the 1995 amendment to A.C.A. § 12-41-506(b) which clearly states that a city is responsible for paying the daily fee for a prisoner sentenced to the county jail only if the crime was violating a municipal ordinance. See A.C.A. § 12-41-506(b)(2) (emphasis added). *Page 10 
 Question 5: If a person is arrested and delivered to the county jailby a municipal police officer for an offense that constitutes a felonyunder Arkansas law, does the city have any liability to the county forthat prisoner?
Prior to 2001, this office had consistently opined that an incarcerated person initially arrested by a city officer for a felony committed within the city was properly considered a municipal prisoner for purposes of A.C.A. § 12-51-506 until felony charges were actually filed against him or her. Op. Att'y Gen. 97-409.
However, in 2001, one of my predecessors, addressing the situation of a prisoner arrested by a city officer for a felony, opined that the better view is that an individual arrested by a city officer for an offense that the city has no authority to prosecute (e.g., a felony) is never a municipal prisoner for purposes of A.C.A. § 12-51-506. Op. Att'y Gen. 2001-359. It is my opinion that this reasoning, if limited to felonies, creates an inconsistency in our definition of a municipal prisoner. This is because the same reasoning appears to apply to prisoners accused of state law misdemeanors. While state law misdemeanors occurring within city limits may be prosecuted by the person of the city attorney, such prosecutions are always in the name of the state. A.C.A. § 16-21-115. In fact, the language of opinion 2001-359 broadly states:
 It is my opinion that a better and more precise view is that persons who are initially arrested by the city police are "prisoners of the municipality" if the city has the authority to prosecute them. This determination can usually be made at the time of arrest on the basis of the offense for which the individual is arrested. If the individual is arrested for an offense that is a felony (or any other offense that the city does not have authority to prosecute), the city cannot prosecute him. . . . That prisoner, therefore, becomes a prisoner of the county at the time of arrest . . . To the extent that any previous opinions of this office have implied otherwise, they are hereby superseded.
Op. Att'y Gen. 2001-359 (emphasis added).
The language of Op. 2001-359 appears to (at least partially) embrace a rule, popular in other jurisdictions, known as the "nature of the offense" rule. In *Page 11 Mohave County v. City of Kingman, 774 P.2d 806 (1989), the Arizona Supreme Court stated that the majority of states follow a "nature of the offense" rule in determining who is responsible for a prisoner. This rule holds that a city is liable to the county for prisoners charged with city ordinance violations, while the county is responsible for prisoners charged with state law violations (presumably including misdemeanors.)
While this more streamlined approach appears to be the modern trend, it is my opinion that it cannot logically be embraced with respect to felonies alone. I note in this regard that a subsequent opinion, Op. 2004-303, reiterated this office's position that prisoners arrested by city officers for state misdemeanors are municipal prisoners. Although the Arkansas Supreme Court has not expressly addressed the issue of what constitutes a municipal prisoner, this office's position on that issue is longstanding and has presumably been relied upon by a number of cities and counties. Moreover, the General Assembly has not amended the statute in question to correct the definition of municipal prisoner that has been offered by this office for many years. This raises the argument that the legislature has acquiesced to this office's traditional definition of a municipal prisoner and it has become the law.
For these reasons, it is my opinion that this office should, for now, continue to embrace its traditional definition of a municipal prisoner with respect to state law misdemeanor offenders. Accordingly, it is my opinion that this office must return to its traditional definition of a municipal prisoner with respect to felony offenders in order to avoid the inconsistency in logic previously described. I therefore conclude that a city is liable to the county for a prisoner arrested by a city officer on felony charges until such time as the prisoner is formally charged. Ops. Att'y Gen. 91-404; 91-409; 96-249; 97-006; 97-299. Legislative clarification regarding the definition of a municipal prisoner is strongly advised.
Question 6: It is clear that a city keeping prisoners in the countyjail is liable to the county for the daily fee for prisoners convictedand sentenced for city ordinance violations; however, my question iswhether the city is liable for any additional time served by suchprisoners due to related charges not brought by the city (e.g., contemptof court, violation of probation, non-payment of fines, failure toperform court-order community service, etc.)? *Page 12 
My research has not uncovered any Arkansas authority on this issue. It is my opinion that the most sensible approach is as follows: if the city is liable for the prisoner both pre-and post-sentencing because he or she has violated a municipal ordinance, then the city is also liable for any additional time served on charges stemming directly from the original charge. This would include the charges that you mentioned in your opinion request. It would not include any separate charges related to the original criminal activity. For guidance on liability for time served on charges of that nature, see my response to restated question 7 directly below.
Question 7: If a person is arrested by a municipal police officer fora city ordinance violation or misdemeanor and taken to the county jailwhere it is discovered that there is an outstanding warrant for thatperson's arrest, either from that county, another county or anothercity, which entity is responsible for paying the daily fee for thatprisoner? Are the expenses shared?
Op. Att'y Gen. 2001-359 addresses shared liability where a prisoner is arrested for or charged with multiple offenses, albeit in a slightly different context. Although I expressed reservations earlier in this opinion regarding Op. 2001-359 as it pertains to a city's initial liability for a felony, I have concluded that the opinion's description of shared liability is applicable to the circumstances you describe. Op. Att'y Gen. 2001-359 states, in relevant part:
 It is my opinion that in these situations, the [entities] must share the costs of incarceration for the period of time during which it is assumed that the . . . entities will be prosecuting the individual. As soon as it becomes apparent that [another entity] also has the authority to prosecute the individual, the [entities] will [all] become responsible for the costs of incarceration and must share that responsibility. As soon as [an] entity indicates that it does not intend to prosecute the individual, the other entity will bear the full responsibility for the incarceration costs, if it can (and intends to) prosecute the individual.
Op. Att'y Gen. 2001-349.
Question 8: Can the sheriff or his representative refuse to acceptcustody of a person lawfully arrested by a municipal police officer froma city within the sheriff's county? *Page 13 
It is my opinion that neither the sheriff nor his representative is permitted to refuse to accept such a prisoner unless that action is necessary to limit prisoner population in compliance with the law and constitution of this state and the United States Constitution.See A.C.A. § 12-41-503(a) (b). Arkansas Code Annotated § 12-41-503 (b) provides:
 Neither the sheriffs nor other keepers or administrators of jails shall refuse to accept any prisoner lawfully arrested or committed within the jurisdiction of the supporting agency of the jail except as necessary to limit prisoner population in compliance with subsection (a) of this section.
Question 9: In light of A.C.A. § 12-41-506(d), can the sheriff refuse toaccept custody of a municipal prisoner from a city within his county ifhe is housing inmates from other counties at the time?
Pursuant to A.C.A. § 12-41-506(d), a sheriff is required to give priority to prisoners from municipalities located in his county. This is true even if the out of county prisoners are housed in the jail pursuant to a contractual arrangement.[4] For this reason, it is my opinion that a sheriff may not refuse in-county municipal prisoners in order to house out of county inmates.
Question 10: Once the county accepts custody of a municipal prisonersuch that the city will be charged the county's daily fee for saidprisoner, who is responsible for transporting that prisoner to courtappearances? Who is responsible for providing security if such prisonerrequires an extended hospitalization?
It is my opinion that once the sheriff or his representative accepts custody of a prisoner, the county is responsible for transporting that prisoner to court appearances and providing security if that prisoner requires hospitalization.
As previously stated, A.C.A. § 12-41-503(b) places an affirmative duty on sheriffs and other jail keepers/administrators to accept prisoners from within the county. Moreover, prisoners from outside of the county may be accepted pursuant to *Page 14 
agreements with other jurisdictions. A.C.A. § 12-41-503(f). Once prisoners are accepted, the sheriff is deemed to have "custody, rule, and charge" of them. A.C.A. § 12-42-502. Because the sheriff has custody, rule and charge of these prisoners, it is my opinion that he or she is responsible for ensuring that such prisoners are transported to court appearances and that such prisoners remain secured while receiving the medical care that they are constitutionally entitled to receive. Op. Att'y Gen. 97-006.
One of my predecessors opined that, although the county is responsible for prisoners in the manner set forth, the costs incurred in transporting and guarding such prisoners may properly be taken into account by the County Quorum Court in setting a daily fee for municipalities pursuant to A.C.A. § 12-41-506. Id. I concur with this analysis.
Question 11: What information should appear on the monthly bill sentby the sheriff, pursuant to A.C.A. § 12-41-506(c)(1), to cities housingprisoners in the county jail?
The statute in question does not address the details of the monthly bill, but simply provides: "Each county sheriff shall bill each municipality monthly for the cost of keeping prisoners in the county jail." A.C.A. § 12-41-506(c)(1).
Generally speaking, statutes should be interpreted in a common sense manner in order to give effect to the legislative intent. It is therefore my opinion, based simply on common sense, that the statute contemplates a monthly bill containing enough information so that a reasonable person of approximately average intelligence can understand both the amount of the charges and the reason for the charges. Whether any particular bill or billing format is sufficient in this regard is ultimately a question of fact. This office cannot serve as a finder of fact.
Question 12: May a city and a county enter into an agreement where thecounty houses the city's prisoners for a flat monthly rate? May thecounty charge other cities a different rate, either daily ormonthly?
In my opinion, a city and a county have the freedom to enter into an agreement where the county houses the city's prisoners for a flat monthly rate. Furthermore, it is my opinion that a county operating a jail may permissibly enter into a separate and distinct agreement for housing prisoners with each city that wishes to share its *Page 15 
jail. However, to the extent your question asks whether the county quorum court may pass multiple daily fee ordinances in order to charge different fees to different cities, it is my opinion that the answer is "no."
Arkansas Code Annotated § 12-41-503(d) addresses the ability of two or more jurisdictions to enter into an agreement or agreements to share a jail. That subsection simply states: "When more than one (1) legal jurisdiction, i.e., counties or municipalities, share a common jail, the participating jurisdictions may enter into agreements to share the operational costs of such jail." A.C.A. § 12-41-503.
As you can see, the language of the statute does not prescribe the length of the time period on which payments made pursuant to such an agreement will be based, e.g., daily, monthly, yearly, etc. In fact, according to my research, the only provisions that require the amount of payment due for sharing a jail to be figured on a daily basis are default provisions applicable in the absence of an agreement to the contrary: A.C.A. § 12-41-503(e) and A.C.A. § 12-41-506(a)(1). While A.C.A. § 12-41-506(c)(1), supra, appears to require a monthlybilling cycle for all fees, this should not affect how the fees arecalculated. Generally speaking, cities and counties have freedom of contract with one another. See, e.g., City of Harrison v. BooneCounty, 238 Ark. 113, 378 S.W. 2d 665 (1964); City of Fayetteville v.Baker, 176 Ark. 1030, 5 S.W.2d 302 (1928).
For these reasons, it is my opinion that an agreement between a city and county for sharing a county jail may be based on a flat monthly rate, a variable monthly rate, a fixed daily rate, or any other type of rate.
In addition, the statute in question clearly states that jurisdictions may enter into agreements to share the costs of operating a jail. A.C.A. § 12-41-503(d). The use of the plural in this instance appears to contemplate that there may be more than one agreement related to the sharing of a single jail. This conclusion is supported by the common sense notion that it would be practical for a county to charge different cities sharing its jail different amounts based on factors such as the number of prisoners that each typically generates in a given time period. For this reason, I believe that a county certainly has the right to enter a separate and distinct agreement with each city that wishes to share its jail. However, to the extent that your question asks whether the county quorum court may pass multiple ordinances pursuant to A.C.A. § 12-41-506 for the purpose of charging different cities different daily fees, it is my opinion that the answer is "no." The plain *Page 16 
language of the statute speaks of the daily fee in the singular, stating that a quorum court is permitted to "establish a daily fee to be charged to municipalities." A.C.A. § 12-41-506(a)(1) (emphasis added).
Question 13: May the county charge one city within the county fordaily inmate fees while waiving such fees for another municipalitywithin the same county?
In my opinion, the answer to this question is "no."
As previously stated, where cities without a separate agreement for housing prisoners are charged daily inmate fees pursuant to county ordinance, it is my opinion that a uniform daily fee must be charged. A.C.A. § 12-41-506(a)(1). Such cities have an affirmative duty to pay the established fee. Id at (b)(1) Moreover, the sheriff of the county has a statutory duty to bill each municipality keeping prisoners in the county jail on a monthly basis. Arkansas Code Annotated § 12-41-506(c)(1) provides that: the "sheriff shall bill eachmunicipality monthly[.]"
Assistant Attorney General Jennie Clingan prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
DM:JC /cyh
[1] Generally speaking, mandamus will lie to compel officials to perform non-discretionary statutory duties. See ArkansasDemocrat-Gazette v. Zimmerman, 341 Ark. 771, 777, 20 S.W.3d 301, 304
(2000); see also Moyer v. Althemier, 168 Ark. 271, 270 S.W. 91 (1925) (holding that mandamus was the proper remedy to compel the county quorum court to appropriate money which it had a legal duty to appropriate.) I recognize, of course, that the county is under no duty to pass an ordinance setting a daily fee for housing prisoners, as the relevant statutory language is permissive rather than mandatory. See A.C.A. § 12-41-506 (a)(1) (stating that the county quorum court "may by ordinance establish a daily fee" (emphasis added.)) However, it appears that if the quorum court chooses to set a daily fee by ordinance, it then has a statutory duty to base that fee upon "the reasonable expenses which the county incurs in keeping such prisoners in the county jail." A.C.A. § 12-41-506(a)(2) (stating that "the fee shall be based upon . . . reasonable expenses[.]")
[2] There has been some inconsistency in the law regarding whether a prisoner arrested by a municipal officer on felony charges ever qualifies as a municipal prisoner. I will address this issue in response to Question 5.
[3] For circumstances under which a city could remain liable for a municipal prisoner after his initial release, see my response to restated question 6.
[4] A.C.A. § 12-41-506(d) provides that "counties shall give priority to in-county municipalities over contracts for out-of-county prisoners." *Page 1